

# NIXON PEABODY LLP
ATTORNEYS AT LAW

50 Jericho Quadrangle
Suite 300
Jericho, New York 11753-2728
(516) 832-7500
Fax: (516) 832-7555
Direct Dial: (516) 832-7566
E-Mail: sberman@nixonpeabody.com

September 26, 2013

**VIA ECF**
Honorable J. Paul Oetken
United States District Court, Southern District of New York
500 Pearl Street
New York, NY 10007-1312

      RE:   *Freeplay Music, LLC v. Makita U.S.A., Inc.*
              S.D.N.Y. Case No. 13 cv 05235 (JPO)

Dear Judge Oetken:

      This firm represents plaintiff Freeplay Music, LLC ("Freeplay") in the above-referenced matter. We write in response to defendant Makita U.S.A., Inc's ("Defendant") letter to the Court, dated September 23, 2013, requesting a conference pursuant to Rule 4(A) of your Individual Practices in Civil Cases (ECF No. 13) (the "Letter").

      The facts of this copyright infringement case are simple and are clearly articulated in the Amended Complaint. Defendant downloaded a number of copyrighted songs owned by Freeplay and, without authorization, used them to make commercials. While no reasonable person could be confused by the allegations in the Amended Complaint, Defendant – unwilling to "face the music" and answer for its actions – instead seeks leave to file its *second* motion to dismiss. The utter lack of merit in Defendant's position, however, makes clear that Defendant's true motive is to delay this action and drive up the cost of litigation.

### The Parties and Acts of Infringement

      Freeplay is a small independent music publishing and production library that has seen its business and industry decimated by piracy. It operates a website that allows customers to purchase licenses to synchronize the music in its catalog for use in audiovisual works.

      Defendant is the U.S. subsidiary of Makita Corporation, a multinational company that generated nearly $4 billion in revenue last year. Defendant is also a highly sophisticated business organization that operates an in-house production company called Makita Film Productions, owns a number of its own copyrights, has its own in-house legal department, and has in the past licensed music for use in its advertisements.

      Defendant downloaded Freeplay's music from Freeplay's website. That site made clear that any use of Freeplay's music would be subject to the Terms of Use and would require the

Honorable J. Paul Oetken
September 26, 2013
Page 2

execution of license agreement and payment of the appropriate royalty. More specifically, the Freeplay homepage contained the following advisory:

> **To Learn how you can use Freeplay Music click on Terms of Use, Licensing, Rate Card. Questions or Comments, contact us at: (212) 974-0548.**

The rate card – which Defendant either intentionally disregarded or carefully chose not to read – provides a detailed explanation of the royalty regime for using Freeplay music. Thus, contrary to Defendant's claims, Freeplay does not promote its music as being "free." Freeplay's website allows potential customers to *play* the individual songs on the website without charge before deciding whether to license a particular song (unlike many of Freeplay's production music industry competitors that require the purchase of entire song libraries or CD compilations without the ability to listen to every track before purchase) – hence the name "Freeplay."[1]

While Defendant – a sophisticated conglomerate with its own captive production company – claims to have fallen victim to Freeplay's "trap," thousands of customers have figured out how to properly license music from Freeplay's website over the past twelve years. Indeed, Defendant would have the Court believe that it relied on metadata (which is embedded code not visible on a website) for its assumption that Freeplay's music was "free" rather than clicking on the licensing rate card on the Freeplay site. This "entrapment" defense is a *post hoc* fantasy. These facts, which are detailed in the Amended Complaint, show either an actual awareness of its infringing activity or a reckless disregard for or willful blindness to Freeplay's rights – the standard for willful copyright infringement in the Second Circuit. *See Island Software and Computer Services, Inc. v. Microsoft Corp.*, 413 F.3d 257, 263 (2d Cir. 2005).

### Procedural History

On September 10, 2013, Defendant filed a letter brief in support of its first Rule 12(b)(6) motion, identifying two nonsensical "defects" in support of its dismissal argument. *See* ECF No. 10. Specifically, Defendant alleged that the complaint was defective because it did not identify the "titles" of the infringing advertisements or include copies of the videos as exhibits – neither of which is required to properly state a claim for copyright infringement. Incredibly, Defendant also requested oral argument on these non-issues. While Freeplay is confident Defendant's motion would have been denied, it chose to amend its complaint to allow the case to proceed without further delay.

But Defendant's dilatory tactics did not stop there. Defendant now seeks to dismiss the Amended Complaint based on Freeplay's alleged failure to sufficiently substantiate its allegations of willful infringement – an argument Defendant could have (and should have) raised in its first motion to dismiss. As detailed below, Defendant – relying on a misreading of a

---

[1] Freeplay's Terms of Use do provide for certain limited rate-free licenses, but not for use in commercial advertisements. Regardless, even the limited royalty-free licenses still require the user to execute a written agreement.

14646841.2

Honorable J. Paul Oetken
September 26, 2013
Page 3

decision it cites – would have the Court spend its time deciding whether Freeplay has *at the outset of the litigation* sufficiently described the "willful" aspect of Defendant's infringement.

### **Defendant's Motion Is Baseless**

To survive a Rule 12(b)(6) motion to dismiss, a claim need only contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted). A claim has facial plausibility when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* at 678; *see also Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007).

Ironically, the Court need only consider the *Blagman* decision cited in Defendant's Letter, where this Court analyzed a complaint for copyright infringement under the *Iqbal* pleading standard and held that "willfulness" is not an element of copyright infringement and denied a motion to dismiss for alleged failure to factually substantiate a "willfulness" claim in a complaint. *See Blagman v. Apple Inc.*, 1:12-cv-05453 (ALC)(JCF), 2013 WL 2181709 at *11-13 (S.D.N.Y. May 20, 2013) ("The contention that Blagman has not established willfulness is irrelevant at this point since willfulness may be demonstrated any time before trial and thus cannot be an element of a copyright infringement claim.") (internal citations omitted). Notably, the *Blagman* court also distinguished and rejected the sole authority cited by Defendant in support of its contention that Freeplay must plead facts of willful infringement in the complaint. *Id.* at *12-13 ("The only case Defendants cite for the proposition that Plaintiff needs to plead willful infringement in the complaint, *Amini Innovation Corp. v. KTY Intern. Marketing*, 768 F. Supp. 2d 1049 (C.D. Cal. 2011), is easily distinguished. There, the court determined damages for a default judgment, where the defendant never appeared and the plaintiff had provided no basis in his complaint that statutory damages for willfulness were warranted… Already, this case is quite the opposite and is heavily contested."). Thus, contrary to Defendant's mischaracterization, the *Amini* court did not dismiss the plaintiff's claims for willful infringement for failing to identify any facts suggesting willfulness. Rather, in the context of determining damages *following entry of default judgment*, the court merely declined to award enhanced statutory damages based on the allegations made in the complaint.

There is no default judgment in the instant case and, after thorough fact discovery, Freeplay intends to fully substantiate its willfulness allegations well before trial. At the conclusion of discovery, if Defendant believes Freeplay cannot make out a claim for wilfullness, it will have the right to move for summary judgment on that issue. Raising the issue now, and hinging its dubious position on an argument already squarely rejected by another court in this district, strongly suggests that Defendant is improperly seeking to delay this action and to drive up Freeplay's litigation costs.

In light of the foregoing, Freeplay respectfully requests that the Court deny Defendant's motion and allow this case to move forward.

Honorable J. Paul Oetken
September 26, 2013
Page 4

      Finally, should the Court elect to schedule a pre-motion conference on this issue, Freeplay respectfully requests that such conference also be used as a discovery scheduling conference and that the parties be ordered to meet and confer and satisfy their obligations under Rule 26 and Your Honor's rules pertaining to the entry of a Civil Case Management Plan and Scheduling Order.

      Best regards,

      *Seth L. Berman (JCA)*

      Seth L. Berman

Cc:    All counsel of record via ECF
       Jaclyn H. Grodin (via email)
       Ben Katzenellenbogen (via email)